# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRANK GONZALES,

Plaintiff,

v.

CATE, et. al.,

Defendants.

_________________________/

1:06-cv-01420-AWI-WMW (PC)

ORDER DISMISSING AMENDED COMPLAINT WITH LEAVE TO AMEND

(Doc. 13)

## I. SCREENING ORDER

Frank Gonzales ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis. Plaintiff seeks relief pursuant to 42 U.S. C. § 1983. Plaintiff filed his original complaint on October 13, 2006. The original complaint plaintiff filed in this matter contained only three pages and named a second plaintiff, Jason Saunders. On November 6, 2006, the Court severed plaintiffs' claims and ordered the clerk to open a new action for Saunders (1:06-cv-01567-AWI-WMW (PC)). On November 16, 2006, the Court dismissed plaintiff's complaint with leave to file an amended complaint by December 19, 2006. Plaintiff filed his amended complaint on December 4, 2006.

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

**B. Summary of Plaintiff's Amended Complaint**

Plaintiff is a state prisoner at Pleasant Valley State Prison ("PVSP") – where the acts he complains of occurred. Plaintiff names the following defendants: Inspector General Matthew L. Cate; Deputy Inspector Generals Katherine Fernando and Marion Marujo; Special Assistant Inspector General Gordon Isen; Warden of PVSP James A Yates; Associate Wardens of PVSP J.M. Mattingly and R.H. Trimble; Captains E.H. Beels and R. Villareal; Lieutenants A. Shimmen, W.K. Meyers, J. Herrera, R. Fisher, J. Scott, D.R. Foreman, and M.D. Spearman; Sergeants R. Lance, Watson C. Cerda, D. Huckabay, L. Hudgins, D. Carlson, B. Piper, and Brian Defrance; Appeal Coordinators E. Parks, R. Shannon, M.C. Voss, and T. Hudson; Correctional Officers C. Govea, T. Mays, S. Deathriage, J. Garrison, R. Milam, M. Phillips, A. Nichols, J. Sierra, K. Dutra, S. Flores, J. Adame, E. Clark, H. Roberts, J. Franco, and N. Garza; Investigative Services Unit John Doe 1, John Doe 2, and John Doe 3; Office of Internal Affairs ("OIA")

Special Agents R. Fuentes and Does 4-10; and Does 11 - 40.

The events plaintiff complains of occurred over the course of a little more than one year – January 1, 2005 through April 30, 2006. Plaintiff is apparently alleging that he was subjected to various acts of retaliation for his relationship with Saunders. Apparently Saunders was litigious, advocated prisoner rights, assisted other prisoners in seeking redress and access to courts, and was willing to teach other prisoners how to access the courts. Saunders embraced Gonzales for this purpose, which was allegedly the impetus for the "tsunami of retaliation." Another inmate, Coleman, was killed by his cell mate, and plaintiff and Saunders "undertook investigative actions" to ascertain the preceding and precipitating events. Plaintiff alleges subsequent cell searches, seizure of personal property, strip searches, threats, rejection of prisoner grievances/appeals, pepper spray, false reports, assaults while handcuffed, denial of procedural due process, and denial of dental and medical care.

Based on these allegations, plaintiff delineates nineteen claims under which he seeks relief – to wit: (1) Deliberate Indifference to Personal Safety/Excessive Force; (2) Interference With or Deliberate Indifference to Serious Medical/Dental Needs; (3) Failure to Train, Supervise and Discipline Employees; (4) Denial of Due Process and Equal Protection of the Law; (5) Conspiracy; (6) Failure to Prevent a Conspiracy; (7) Violation of 42 U.S.C. § 1988; (8) Violation of the Americans With Disabilities Act of 1990; (9) Violation of § 504 of the Rehabilitation Act of 1973; and (10) through (19) are various claims under California law.

Plaintiff may be able to state cognizable claims for violation of his constitutional rights. It is noted that plaintiff's original complaint did not contain any facts. Thus, the Court's original screening order could not, and did not provide any standards for plaintiff to use in drafting his amended complaint. Thus, the Court will allow plaintiff to file a second amended complaint and herein provides pleading standards based on plaintiff's delineated claims for relief.

**C. Pleading Requirements**

**1. *Federal Rule of Civil Procedure 8(a)***

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534

U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

It appears that, in filing his amended complaint, plaintiff merely took his original complaint, deleted Saunders' name and identifying information from the caption and first page, blanked out the word "Joint" and handwrote in the word "Amended." The Court realizes that the original complaint in this matter, as filed, was only three pages in length. However, page three in the Court's electronic file, was numbered "43" by plaintiff. It appears as though pages 3-42 were mistakenly not filed with the original complaint, but were filed with the amended complaint. As a result, plaintiff's amended complaint identifies both plaintiff and Saunders as the plaintiffs in this action and states that plaintiff and Saunders join in pursuing this action pursuant to Federal Rules of Civil Procedure Rule 20(a) and California Code of Civil Procedure §§ 378 and 427.10 – despite the Court's prior severance order.

Further, Saunders is repeatedly referred to as a plaintiff and almost all references are to

plural "plaintiffs" throughout the factual statement of the case. Thus, the amended complaint does not set forth a plain concise statement of plaintiff's factual allegations and injuries. Additional difficulty in screening plaintiff's complaint is encountered due to the manner in which the amended complaint is organized. The amended complaint consists of a narrative of events approximately fifteen pages in length, followed by plaintiff's claims for relief which do not refer to specific facts upon which they are based. Thus, it is extremely difficult, indeed impossible in some instances, for the Court to ascertain which facts plaintiff feels support which of his multiple claims for relief. As it is the duty of the plaintiff to state cognizable claims for relief, the Court will not guess as to which facts may or may not support which constitutional violations that may be made in a Section 1983 action. Plaintiff is encouraged to delineate the specific defendant(s) and each offending action(s) under whichever claim for relief he feels they support.

The Court will provide plaintiff one last opportunity to amend his complaint to clarify his allegations.

**2. *Federal Rule of Civil Procedure 18***

"The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff has stated nineteen (19) claims for relief, which do not all appear to be related. Plaintiff is advised that, if he chooses to file a second amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the

future.

**3. *Linkage Requirement***

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff is advised that generalized statements such as "defendants and their superiors" does not meet the linkage requirements of section 1983. In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

**D. Plaintiff's Claims for Relief**

**1. *Deliberate Indifference to Personal Safety/Excessive Force***

Plaintiff's first claim for relief is based on deliberate indifference to his safety and use of excessive force by prison personnel. Doc. 13, pp. 22-25.

**a. *Safety***

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray 682 F.2d 1237, 1250-51 (9th Cir. 1982); see also Farmer v. Brennan 511 U.S. 825, 833 (1994).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the

inmate's safety, the prison must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).  To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

The Ninth Circuit has held that placing a pre-operative transsexual, who acts and dresses effeminately, in the prison's general population evidenced of deliberate indifference to an inmate's safety.   Farmer, 511 U.S. at 848-49; cf. Redman v. County of San Diego, 942 F.2 1435, 1444-45 (9th Cir. 1991)(en banc)(concluding that placing a young pre-trial detainee in a cell with a known aggressive sexual offender was deliberate indifference to the detainee's safety). Allegations that a defendant placed an "R-suffix" (indicating inmate is a sexual offender) in an inmate's file, knowing that the inmate would be stabbed if he was subsequently placed into the general population are sufficient to show that the defendant had knowledge of a risk to plaintiff's safety.  See Knight v. Runnels No. CIV S-07-0751-FCD-CMK-P (E.D. Cal. Filed Aug. 20, 2007).  The Ninth Circuit has also held that allegations that prison officials called a prisoner a "snitch" in the presence of other inmates were sufficient to state a claim of deliberate indifference to an inmate's safety.  See Valandingham v. Bojorquez, 866 F.2d 1135, 1139 (9th Cir. 1989).  But see Morgan v. MacDonald 41 F.3d 1291, 1293-94 (9th Cir. 1994)(rejecting Eighth Amendment claim where prisoner who had been labeled a snitch had not been retaliated against).

Plaintiff repeatedly states that he had safety concerns regarding his release from the Administrative Segregation Unit ("ASU") due to "plaintiffs" being in debt to other prisoners which was caused by "Scott, Defrance, Watson, Garza, Granco, Mays and certain Does' ."  Doc. 13, pp. 14-17.  However, plaintiff fails to allege whether he was actually released from ASU, and/or was injured as a result.

Plaintiff also states that, on February 5, 2006, "Adame, knowing the premises were

unsafe due to a large puddle of water, nonetheless escorted Gonzales through such in turn causing him to slip and injure himself...." Doc. 13, pg. 18. Escorting an inmate through a large puddle of water does not rise to the level of deliberate indifference to an inmate's safety.

Thus, plaintiff fails to state a cognizable claim for deliberate indifference to his safety.

**b. *Excessive Force***

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim," and "deliberate indifference to medical needs" violates the Eighth Amendment "only if those needs are 'serious.'" Id. at 9 (citation omitted). With respect to these types of claims, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. at 9 (quotations and citations omitted). With respect to excessive force claims, however, the malicious and sadistic use of force to cause harm *always* violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).

When a prison security measure is undertaken in response to a incident, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 4, 5-7, 112 S.Ct. 995, 999 (1992). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986). Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived

by the responsible officials on the basis of the facts know to them, and any efforts made to temper the severity of a forceful response. Id., at 321. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Whitley v. Albers, *supra* at 319; see also, Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992). Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (*quoting* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1970).

Plaintiff alleges that "plaintiffs were taped up and humiliated by an escort to 'A' Facility Program Office whereupon Garrison and Deathriage conducted their strip searches. Following strip search plaintiffs were placed into steel cages." Doc. 13, pg. 10. One incident of being strip-searched and subsequently placed in a steel cage does not state a cognizable claim for use of excessive force.

Plaintiff alleges that, on September 30, 2005, just after 2:19 p.m., Phillips and Nichols approached "plaintiff's cell" and requested "them" to exit. "[T]hey sought a Lieutenant's presence, covered their door window and jammed their door." Lantz, Govea, Deathriage, Garrison, Milam, Roberts and Clark were summoned and again "plaintiffs" sought the presence of a Lieutenant before they would comply, due to a concern of "foul play." "[T]heir water, power and ventilation were turned off" and "defendants" opened the cell door, to saturate "plaintiffs" with "three full canisters of O.C. pepper spray." As a result, "plaintiffs suffered asthma attacks and chemical irritation of their airways and were placed on oxygen machines." Doc. 13, pg. 12. The use of pepper spray in response to prisoners who have "covered their door window and jammed their door" does not rise to the level of a cognizable claim for excessive force.

Plaintiff alleges that "Garrison, Govea, and Deathriage savagely beat, kicked, punched and stomped plaintiffs in the ribs, groin, face, head, arms, back and/or legs while handcuffed and prior to ASU placement. Said force served no penological interest nor was it to restore order as

plaintiffs offered no resistance. Rather, the force was malicious, sadistic and was calculated to inflict pain and sufferings upon plaintiffs. Plaintiffs suffered severe and lasting injuries." This is certainly a showing of a malicious and sadistic use of force. However, it is not a cognizable claim as it runs afoul of Rule 8(a) – due to the use of the plural "plaintiffs," the statements are not precise enough to place the defendants on notice as to which defendant(s) allegedly battered plaintiff and which, if any, may have battered only Saunders.

**2. *Interference/Deliberate Indifference to Serious Medical/Dental Needs***

Plaintiff's second claim for relief is based on interference with and/or deliberate indifference to his serious medical and dental needs. Doc. 13, pp. 25-28.

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain." ' McGuckin, 974 F.2d at 1059 (*quoting* Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere

'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (*citing* Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (*quoting* Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*). Mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious." ' Id. The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997). Deliberate indifference exists

when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. Farmer v. Brennan, 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989). Mere indifference, medical malpractice, or negligence also will not support a cause of action under the Eighth Amendment. Broughton v. Cutter Lab, 622 F.2d 458, 460 (9th Cir.1980). Additionally, mere negligence is insufficient for liability. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir.2002). Rather, the prisoner must show that the course of treatment undertaken was medically unacceptable under the circumstances, and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996). Finally, a mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. Wood v. Housewright, 900 F .2d 1332, 1335 (9th Cir.1990).

It is difficult for the Court to decipher the factual basis upon which plaintiff basis this claim for relief. Plaintiff has neither named any medical provider (i.e. physician, nurse, medical assistant, etc.) as a defendant, nor has he stated any facts to allege that he presented for examination and was treated by a medical provider who was deliberately indifferent to his serious medical needs. Thus, the Court evaluates this claim for relief under the assumption that plaintiff intends to allege deliberate indifference, via delayed medical treatment. Yet these allegations fail as well. Specifically, plaintiff allegedly suffered an asthma attack after being pepper sprayed on September 30, 2005. However, plaintiff also alleges that he was placed on oxygen and cleared for ASU placement after being medically examined – without giving any time frames to support a delay in treatment. Plaintiff also failed to allege whether he suffered any harm as a result of delayed medical treatment. Plaintiff further alleges that after being placed in ASU "plaintiffs sought medical and dental attention ... to obtain a medical exam to note the injuries and in which to be afforded their asthma medications.... [which] were futile...." However, plaintiff again failed to allege whether he suffered any resulting serious harm. Doc. 13,

pp. 12-13.

Thus, plaintiff has failed to state a cognizable claim for interference/delay/deliberate indifference to his serious medical needs.

**3. *Failure to Train, Supervise and Discipline Employees***

Plaintiff's third claim of relief is for failure to train, supervise and discipline of prison personnel. Doc. 13, pp. 28-31.

In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the Supreme Court held that, under certain circumstances, a municipality may be held liable based on the failure to train its employees. This court finds no authority for the extension of City of Canton and its progeny to a state prison official being sued in his personal capacity. It appears to this court, following a review of the relevant case law, that the cases involving failure to train are limited to suits against city and county entities. Plaintiff has not named any city or county entities as defendants in this action.

This is not to say that plaintiff cannot allege facts involving the failure to train that are sufficient to state a claim under a theory of supervisory liability. For instance, it is possible that the failure to train employees in a particular respect may amount to a policy or practice of failing to provide employees with adequate training, and that the policy or practice of failing to provide adequate training amounts to deliberate indifference.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v.

Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff's alleges that the "named defendants negligently and carelessly trained, supervised and disciplined PVSP, OIG, and OIA personnel in policies, procedures and other methods ...." Such general assertions are not factually specific enough to state a claim that supervisorial personnel personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646.

Thus, plaintiff has failed to state a cognizable claim for failure to train, supervise, and discipline prison personnel.

**4. *Denial of Due Process and Equal Protection of the Law***

Plaintiff's fourth claim for relief is based on denial of due process and equal protection of the law. Doc. 13, pg. 31.

**a. *Due Process***

As best as the Court is able to decipher, plaintiff claims violation of his right to due process based on disciplinary hearing procedures and the handling of prisoner grievances/appeals.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate.  See Wolff v. McDonnell, 418 U.S. 539, 563-70 (9th Cir. 1974); see also Superintendent v. Hill 472 U.S. 445, 454 (1985); Neal v. Shimoda, 131 F.3d 818, 830-31 (9th Cir. 1997); Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir. 1986).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest."  Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense).  The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff."  Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ."  Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrat existence of liberty interest.)

However, the "some evidence" standard does not apply to original rules violation report where a prisoner alleges the report is false.  Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).

Further, actions in reviewing prisoner's administrative appeal cannot serve as the basis

for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

The Court is unable to locate any alleged facts to address of the requirements set forth in Wolff. All of plaintiff's allegations relative to disciplinary hearing(s) and prisoner grievances/appeals are stated in the plural ("plaintiffs") and thus the Court is unable to decipher whether plaintiff or Saunders was denied due process. Further, the results of plaintiff's inmate appeal(s) cannot give rise to any claims for relief under section 1983.

**b. *Equal Protection***

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004);

SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564. If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley, 375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

Plaintiff has not shown that he is a member of a protected class, nor has he shown that he was intentionally treated differently from other similarly situated individuals without a rational relationship to a legitimate state purpose.

**5. *Conspiracy – 42 U.S. C. 1985(3)***

Plaintiff's fifth claim for relief is based on a conspiracy by a majority of the named defendants. Doc. 13, pp. 31-32.

Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

Under his fifth claim for relief, plaintiff names most of the defendants and generally

alleges that they conspired together to "deprive plaintiffs of their constitutional rights ... [to] Due Process and Equal Protection of Law" in an effort "to chill their First Amendment guarantees to the press and" access to the courts. Plaintiff does not allege specific facts to support the allegation that the named defendants conspired together and the Court will not guess which of the facts in the approximately fifteen page factual narrative plaintiff intended to support this claim for relief. Thus, plaintiff has failed to state a cognizable claim for relief under 42 U.S.C. § 1985(3).

**6. *Failure to Prevent a Conspiracy – 42 U.S. C. 1986***

Plaintiff's sixth claim for relief is based on failure to prevent the conspiracy discussed immediately above. Doc. 13, pp. 32-33.

"Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 971 n.7 (9th Cir. 1994). Plaintiff may not pursue a claim for relief under 42 U.S.C. § 1986 unless he has first stated a claim for relief under section 1985. McCalden v. California Library Assoc., 955 F.2d 1214, 1223 (9th Cir. 1992). As discussed in the preceding section, plaintiff's amended complaint does not contain a cognizable claim for relief under section 1985. Accordingly, plaintiff's amended complaint fails to state a claim for relief under section 1986.

**7. *42 U.S. C. § 1988***

Plaintiff states that his seventh claim for relief is based 42 U.S.C. § 1988. Doc. 13, pg. 33. Section 1988 does not create an independent cause of action. See Moor v. County of Alameda, 411 U.S. 693, 703-04 n.17 (1973) overruled on other grounds by Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Therefore, plaintiff may not pursue a claim for relief against defendants under section 1988.

**8. *Americans With Disabilities Act and Rehabilitation Act***

Plaintiff's eighth and ninth claims for relief are based on violation of the Americans with Disabilities Act and the Rehabilitation Act. Doc. 13, pp. 33-36.

Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act

(RA) "both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S. C. § 794. Title II of the ADA and the RA apply to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

The  treatment, or lack of treatment, concerning plaintiff's medical condition does not provide a basis upon which to impose liability under the RA or the ADA. Burger v. Bloomberg, 418 F.3d 882, 882  (8th Cir. 2005) (medical treatment decisions not a basis for RA or ADA claims); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (RA not intended to apply to medical treatment decisions); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (Medical decisions not ordinarily within scope of ADA or RA); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

"'Title II of the ADA prohibits discrimination in programs of a public entity or

discrimination by any such entity.'" Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting Thomas v. Nakatani, 128 F.Supp.2d 684, 691 (D. Haw. 2000)). "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Roundtree, 2005 WL 3284405, at *8 (citing 42 U.S.C. § 12131(1)(A)-(B)). Public entity, "'as it is defined within the statute, does not include individuals.'" Id. (quoting Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).

Individual liability is precluded under Title II of the Americans with Disabilities Act, and plaintiff may not pursue his ADA claim against the individual defendants named in the complaint. Plaintiff has not named any public entity as a defendant in this case. Thus, his claim under the ADA fails.

Plaintiff's claims under the RA fail as he has not stated facts to show "that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Lovell, 303 F.3d at 1052.

**9. *State Law Claims {Claims (10) through (19)}***

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v.

Gibbs, 383 U.S. 715, 726 (1966).

**10. *Retaliation***

While retaliation is not one of plaintiff's stated claims for relief, derivations of the word "retaliate" are peppered throughout plaintiff's factual narrative.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). To establish a prima facie case, plaintiff must allege and show that defendants acted to retaliate for his exercise of a protected activity, and defendants' actions did not serve a legitimate penological purpose. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt 65 F.3d at 807. The injury asserted in retaliation cases is the retaliatory conduct's chilling effect on the plaintiff's First Amendment rights. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).

A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. Pratt, 65 F.3d at 806. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. See Pratt 65 F.3d at 808; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

## II. CONCLUSION

For the reasons set forth above, plaintiff's first amended complaint is dismissed, with leave to file an amended complaint within thirty days.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or

connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is advised that it is inappropriate to attach exhibits to a complaint. See Rule 8, Federal Rules of Civil Procedure. Further, the Court cannot serve as a repository for the parties' evidence. Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court). At this point, the submission of evidence is premature as the plaintiff is only required to state a prima facie claim for relief. Thus, in amending his complaint, plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff must file a second amended complaint curing the deficiencies identified by the court in this order; and
4. If plaintiff

fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated: May 1, 2008**

**/s/ William M. Wunderlich**
UNITED STATES MAGISTRATE JUDGE